O

1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11   RUTH R. COX,                    )   Case No. CV 11-10433-SP
                                      )
12              Plaintiff,            )
                                      )
13        v.                          )   MEMORANDUM OPINION AND
                                      )   ORDER
14                                    )
     MICHAEL J. ASTRUE,               )
15   Commissioner of Social Security  )
     Administration,                  )
16                                    )
                Defendant.            )
17   _____)

18

19                              **I.**

20                         **INTRODUCTION**

21        On December 16, 2011, plaintiff Ruth R. Cox filed a complaint against

22   defendant Michael J. Astrue seeking a review of a denial of a period of disability

23   and Disability Insurance Benefits ("DIB").  Both plaintiff and defendant have

24   consented to proceed for all purposes before the assigned Magistrate Judge

25   pursuant to 28 U.S.C. § 636(c).  The court deems the matter suitable for

26   adjudication without oral argument.

27        Plaintiff presents three disputed issues for decision:  (1) whether the

28

residual functional capacity ("RFC") assessment was sufficiently specific; (2) whether the administrative law judge ("ALJ") properly considered the opinions of plaintiff's treating physician and consultative examiner; and (3) whether the ALJ properly considered plaintiff's credibility. Plaintiff's Memorandum in Support of Complaint ("Pl. Mem.") at 16-25; Memorandum in Support of Defendant's Answer and in Opposition to Plaintiff's Memorandum in Support of Complaint ("D. Mem.") at 2-19.

Having carefully studied, the parties's written submissions, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ's RFC determination was not sufficiently specific, the ALJ failed to properly consider the opinions a treating physician and a consultative examiner, and the ALJ improperly discounted plaintiff's credibility. Therefore, the court remands this matter to the Commissioner of the Social Security Administration ("Commissioner") in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

**II.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 55 years old on the date of her January 13, 2010 administrative hearing, is a high school graduate and completed vocational training. AR at 53, 112, 137-38. Her past relevant work includes employment as a legal secretary. *Id.* at 70, 133.

On May 12, 2008, plaintiff filed an application for DIB and a period of disability, alleging an onset date of May 10, 2007, due to a herniated disc, bulging disc in neck, carpal tunnel, and a pinched nerve. *Id.* at 112, 121, 132. The Commissioner denied plaintiff's application initially, after which she filed a request for a hearing. *Id.* at 75-80.

On January 13, 2010, plaintiff, represented by counsel, appeared and

1   testified at a hearing before the ALJ. *Id.* at 53-73. The ALJ also heard testimony

2   from Stephen Berry, a vocational expert. *Id.* at 70-73. On February 11, 2010, the

3   ALJ denied plaintiff's claim for benefits. *Id.* at 33-41.

4   Applying the well-known five-step sequential evaluation process, the ALJ

5   found, at step one, that plaintiff had not engaged in substantial gainful activity

6   since May 10, 2007. *Id.* at 35.

7   At step two, the ALJ found that plaintiff suffered from the following severe

8   impairments: degeneration of the cervical spine, thoracic spine, and lumbar spine;

9   and carpal tunnel syndrome. *Id.*

10   At step three, the ALJ found that plaintiff's impairments, whether

11   individually or in combination, did not meet or medically equal one of the listed

12   impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the

13   "Listings"). *Id.* at 36.

14   The ALJ then assessed plaintiff's RFC[1] and precluded plaintiff from:

15   prolonged standing and walking; repetitive bending and twisting[2]; pushing and

16   pulling more than twenty-five pounds; and repetitive lifting, carrying, gripping,

17   and grasping more than twenty-five pounds. *Id.*

18   The ALJ found, at step four, that plaintiff was capable of performing her

19   past relevant work. *Id.* at 40. Consequently, the ALJ concluded that plaintiff did

20

21   [1]   Residual functional capacity is what a claimant can do despite existing

22   exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152,
      1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step

23   evaluation, the ALJ must proceed to an intermediate step in which the ALJ

24   assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486
      F.3d 1149, 1151 n.2 (9th Cir. 2007).

25

26   [2]   In the decision, the ALJ precluded plaintiff from repetitive "testing." AR at

27   36. Defendant argues that the ALJ made a typographical error and meant to state
      that plaintiff was precluded from repetitive twisting. D. Mem. at 3, n.2. The court

28   agrees.

3

1   not suffer from a disability as defined by the Social Security Act. *Id.* at 40-41.

2       The decision of the ALJ stands as the final decision of the Commissioner.

3                                         **III.**

4                            **STANDARD OF REVIEW**

5       This court is empowered to review decisions by the Commissioner to deny

6 benefits. 42 U.S.C. § 405(g). The findings and decision of the Commissioner

7 must be upheld if they are free of legal error and supported by substantial

8 evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as

9 amended). But if the court determines that the ALJ's findings are based on legal

10 error or are not supported by substantial evidence in the record, the court may

11 reject the findings and set aside the decision to deny benefits. *Aukland v.*

12 *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

13 1144, 1147 (9th Cir. 2001).

14       "Substantial evidence is more than a mere scintilla, but less than a

15 preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such

16 "relevant evidence which a reasonable person might accept as adequate to support

17 a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

18 F.3d at 459. To determine whether substantial evidence supports the ALJ's

19 finding, the reviewing court must review the administrative record as a whole,

20 "weighing both the evidence that supports and the evidence that detracts from the

21 ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be

22 affirmed simply by isolating a specific quantum of supporting evidence.'"

23 *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

24 Cir. 1998)). If the evidence can reasonably support either affirming or reversing

25 the ALJ's decision, the reviewing court "'may not substitute its judgment for that

26 of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

27 1992)).

28

**IV.**

**DISCUSSION**

**A.    The RFC Was Not Sufficiently Specific**

Plaintiff argues that the RFC assessment was not sufficiently specific because the ALJ failed to make a function-by-function assessment.  Pl. Mem. at 16-17.  Specifically, plaintiff contends that the ALJ's failure to quantify her limitations and restrictions by hours, weight, and frequency rendered the RFC assessment "impermissibly vague."  *Id.* at 17.  The court agrees.

RFC is what one "can still do despite [his or her] limitations."  20 C.F.R. § 416.945(a)(1).  An "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."  Social Security Ruling ("SSR") 96-80, 1996 WL 374184, *1.[3]  The ALJ must "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record."  *Id.* at *7.  An RFC assessment must address both the exertional and nonexertional capacities of the individual.  *Id.* at *5.  Exertional capacity relates to the ability to perform sitting, standing, walking, lifting, carrying, pushing, and pulling.  *Id.*  Nonexertional capacity refers to all work-related limitations that do not depend on physical strength such as stooping and climbing.  *Id.* at *6.

The Commissioner reaches an RFC determination by reviewing and considering all of the relevant evidence.  *Id.*  When the record is ambiguous, the Commissioner has a duty to develop the record.  *See Webb v. Barnhart*, 433 F.3d

---

[3]    "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies.  SSRs are binding on all components of the [Social Security Administration].  SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."  *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

683, 687 (9th Cir. 2005); *see also Mayes*, 276 F.3d at 459-60 (ALJ has a duty to develop the record further only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to know the basis of [a doctor's] opinion[ ] in order to evaluate [it], he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physician[ ] or submitting further questions to [him or her].").  This may include retaining a medical expert or ordering a consultative examination.  20 C.F.R. § 416.919a(a).

Here, the ALJ restricted plaintiff from:  pushing and pulling more than twenty-five pounds; repetitive lifting, carrying, gripping, and grasping more than twenty-five pounds; repetitive bending and twisting; and prolonged standing and walking.  AR at 36.

The RFC was not sufficiently specific.  The ALJ failed to describe the maximum amount of standing and walking plaintiff may engage in an eight-hour work day.  The ALJ precluded plaintiff from "prolonged" standing and walking, but he failed to define "prolonged".  *See Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (stating that the term "prolonged walking" is vague); *cf. Gallagher v. Astrue*, No. 07-5688, 2009 WL 57033, at *6 (C.D. Cal. Jan. 6, 2009) (holding that the ALJ erred when he failed to adopt a consistent, unambiguous definition of "moderate").

In reaching the determination that plaintiff be restricted from "prolonged" standing and walking, the ALJ relied on a Primary Treating Orthopedic Physician's Narrative Report and a Permanent and Stationary Report dated July 14, 2008 ("WC Report") by Dr. Satish Kadaba, in which he did not define "prolonged."  AR at 37, 249-64.  Generally, when a physician's opinion is ambiguous, the ALJ has the duty to conduct further inquiry or develop the record. *Mayes*, 276 F.3d at 459-60; *Smolen*, 80 F.3d at 1288.  But in this instance further

1    development of the record was unnecessary, because in a subsequent opinion Dr.

2    Kadaba precluded plaintiff from standing and walking for more than one to two

3    hours in an eight-hour day.  AR at 436.  The ALJ could have reasonably defined

4    "prolonged" as no more than two hours.  Instead, the ALJ interpreted the two

5    opinions as "inconsistent" and rejected the opined time limitation.  *Id.* at 37.  Thus,

6    it is unclear what the ALJ meant by "prolonged" other than it is longer than two

7    hours.

8            For these reasons, the ALJ's RFC assessment is unclear and is not supported

9    by substantial evidence.  As such, the ALJ erred in his RFC assessment.

10   **B.     The ALJ Failed to Provide Specific and Legitimate Reasons for**

11          **Rejecting the Opinions of a Treating and an Examining Physician**

12          Plaintiff contends that the ALJ improperly rejected the opinions of Dr.

13   Kadaba, a treating physician, and Dr. Humberto A. Galleno, a consultative

14   examiner.  Pl. Mem. at 17-22.  Specifically, plaintiff claims that the ALJ failed to

15   offer specific and legitimate reasons for discounting portions of Dr. Kadaba's

16   opinion and Dr. Galleno's opinion in its entirety.  *Id.*  The court agrees.

17          In determining whether a claimant has a medically determinable

18   impairment, among the evidence the ALJ considers is medical evidence.  20

19   C.F.R. § 416.927(b).  In evaluating medical opinions, the regulations distinguish

20   among three types of physicians:  (1) treating physicians; (2) examining

21   physicians; and (3) non-examining physicians.  20 C.F.R. § 416.927(c), (e); *Lester*

22   *v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended).  "Generally, a treating

23   physician's opinion carries more weight than an examining physician's, and an

24   examining physician's opinion carries more weight than a reviewing physician's."

25   *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R.

26   § 416.927(c)(1)-(2).  The opinion of the treating physician is generally given the

27   greatest weight because the treating physician is employed to cure and has a

28

greater opportunity to understand and observe a claimant. *Smolen*, 80 F.3d at 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

### 1. Medical Opinions

#### a. Treating Physicians

*Dr. Satish Kadaba*

Dr. Kadaba, an orthopedic surgeon, treated plaintiff from October 2, 2007 through 2009, under the future medical provisions of plaintiff's worker's compensation case. AR at 66, 230. Dr. Kadaba regularly examined plaintiff and reviewed her medical records. *See, e.g., id.* at 305-09, 326-29, 334-37. Among Dr. Kadaba's findings were observations that plaintiff had: pain during examinations; positive Tinel's and Phalen's signs; a positive Finkelstein's test; sensory loss; limitation of motion; tenderness; and carpal tunnel syndrome. *See, e.g.*, *id.* at 249-64, 338-41. Based on his examinations and review of plaintiff's medical records, Dr. Kadaba diagnosed plaintiff with: cervical ligamentous and muscular strain; thoracic ligamentous and muscular strain with discopathy;

lumbosacral ligamentous and muscular strain with discopathy; bilateral carpal-tunnel syndrome; and stress, anxiety, and depression. *See, e.g.*, *id*. at 258. Dr. Kadaba recommended surgery to treat the carpal tunnel syndrome, but it was not authorized. *See id.* at 332, 351, 452.

On three separate occasions, Dr. Kadaba offered opinions as to plaintiff's exertional limitations. On May 30, 2008, in a Musculoskeletal Questionnaire, Dr. Kadaba opined that plaintiff was limited in her above the shoulder and overhead motion, and was precluded from repetitive grasping, lifting, and carrying. *Id.* at 230-32. In the July 14, 2008 WC Report, Dr. Kadaba opined that plaintiff is precluded from: prolonged standing and walking; repetitive bending and twisting; pushing and pulling more than twenty-five pounds; and repetitive lifting, carrying, gripping, and grasping more than twenty-five pounds. *Id.* at 260. On December 12, 2008, in a Spinal Impairment Questionnaire, Dr. Kadaba opined that in an eight-hour work day, plaintiff: could sit/stand/walk for one to two hours; could frequently lift/carry five pounds and occasionally lift/carry ten pounds; could not keep her neck in a constant position; and could only engage in limited reaching/pushing/pulling/stooping. *Id*. at 433-39.

*Dr. Melvin Coats*

Dr. Coats treated plaintiff from April 2007 through March 2008. *Id.* at 183-86, 208-14. Dr. Coats's records reflect that plaintiff complained of back and neck pain. *Id.* Dr. Coats ordered MRIs which showed, among other things, a three-millimeter posterior disc protrusion at T8-9, mild degenerative disc disease at T9-10 with posterior disc extrusion measuring approximately five millimeters in AP dimension by three millimeters in craniocaudal dimension, a three-millimeter posterolateral/foraminal disc protrusion at L2-3, and two to three-millimeter posterior disc bulges at L3-4, L4-5, and L5-S1. *Id.* at 395-96.

*Dr. Melanie Kinchen*

Upon referral by Dr. Coats, Dr. Kinchen, a physician at the Spine Center of the Presbyterian Intercommunity Hospital ("Spine Center"), treated plaintiff in 2007. *Id.* at 179-81, 215, 223. Dr. Kinchen observed that an MRI showed mild degenerative changes without evidence of nerve root compression and disc herniation. *Id.* Dr. Kinchen diagnosed plaintiff with thoracic disc herniation and recommended additional studies. *Id.* at 180-81, 215. Dr. Kinchen ordered an epidural injection and was uncertain that surgery would improve plaintiff's symptoms because the pain was not myelopathic. *Id.* at 172, 215.

### b.    Examining Physicians

*Dr. Humberto A. Galleno*

Dr. Galleno an orthopedic surgeon, examined plaintiff on December 28, 2009, and completed a Comprehensive Orthopedic Disability Evaluation ("Galleno Evaluation") and Multiple Impairment Questionnaire ("Galleno Questionnaire"). *Id.* at 630-38, 640-47. Dr. Galleno reviewed plaintiff's history and medical records, and conducted a physical examination. *Id.* At the examination, Dr. Galleno observed that plaintiff had: decreased sensation and range of motion in the thoracolumbar spine and cervical spine; positive Tinel's and Phalen's tests; bilateral thenar eminence atrophy; and slight pain with extremes of wrist range. *Id.* at 633-34. Dr. Galleno diagnosed plaintiff with: cervical spine sprain-strain with degenerative disc syndrome; thoracic spine sprain-strain with disc protrusions; lumbrosacral spine sprain-strain with disc protusion, disc bulging, and slight central and foraminal stenosis; bilateral carpal tunnel syndrome; and anxiety and depression. *Id.* at 637.

In the Galleno Evaluation, Dr. Galleno opined that plaintiff should be precluded from lifting, pushing, and carrying over five pounds, as well as repetitive bending, stooping, above shoulder work activities, climbing, motion of

the cervical or hyper extension of the cervical spine, grasping, and gripping. *Id.* at 637-38. Dr. Galleno also opined that plaintiff could type for no more than thirty minutes at a time with a ten to fifteen-minute break in between, could sit for no more than one to two hours in an eight-hour work day, and could not drive for more than an hour. *Id.* at 638. Dr. Galleno also noted these limitations in the Galleno Questionnaire, but with two minor differences. *Id.* at 640-47. In the Galleno Questionnaire, Dr. Galleno opined that plaintiff could occasionally lift and carry ten pounds and precluded her from bending and stooping. *Id.* at 643, 646.

*Dr. Gabriel Fabella*

Dr. Fabella, an internist, examined plaintiff on June 28, 2008. *Id.* at 233-37. Dr. Fabella did not review any medical records. *Id.* at 234. At the examination, Dr. Fabella observed that plaintiff had: no tenderness to palpation in the midline or paraspinal areas; decreased range of motion in the back; no thoracic tenderness; and no tenderness in the wrists. *Id.* at 236. Dr. Fabella diagnosed plaintiff with: chronic mid back pain from degenerative disc disease and disc bulging; hypertension; gastroesophageal reflux disease; and hyperlipidemia. *Id*. at 237. Based on the examination, Dr. Fabella opined that plaintiff could: stand/walk for six hours in an eight-hour day; lift twenty pounds occasionally and ten pounds frequently; and occasionally bend and stoop. *Id.* Dr. Fabella placed no limitations on sitting. *Id.*

*Dr. Ali Hafezi*

Dr. Hafezi of the Spine Center, examined plaintiff on June 27, 2007. *Id*. at 224-25. Dr. Havezi observed that plaintiff had mild paraspinal muscle discomfort at the scapular and rhomboid areas, a three millimeter posterior disc with broad based mild stenosis at the central canal, mild degenerative disease with posterior disc extrusion causing mild ventral cord effacement with mild to moderate right

foraminal stenosis, and disc desiccation. *Id.* Dr. Hafezi opined that the pain was consistent with discogenic type pain and that an epidural would have only marginal benefit. *Id.* at 225.

*Dr. Richard A. Rison*

On July 18, 2007, Dr. Rison, a neurologist, examined plaintiff upon referral by Dr. Coats. *Id.* at 216-17. Dr. Rison observed that plaintiff had slightly diminished sensation in the bilateral lower extremities. *Id.* at 217. Dr. Rison's impression was that plaintiff had appendicular paresthesias, thoracic spondylosis disc extrusion, and mild central canal stenosis, lumbar spondylosis disc protrusion with mild right neuroforaminal stenosis and posterior disc bulges, migraine, hypertension, and hypercholesterolemia. *Id.* Dr. Rison recommended further studies. *Id.*

*Dr. B. Sam Tabibian*

On November 1, 2007, Dr. Tabibian conducted an electrodiagnostic evaluation of the bilateral upper and lower extremities. *Id.* at 416-23. The EMG did not detect indicators of neuropathy involving the motor portion of the cervical and lumbar nerve roots or in the lower extremities. *Id.* at 422. Dr. Tabibian noted, however, that he could not rule out radiculopathy on the basis of normal EMG findings because EMG does not detect all forms of radiculopathy. *Id.* Therefore, clinical correlation was required for an accurate diagnosis. *Id.*

*Dr. Manuel S. Anel*

Dr. Anel, an orthopedic surgeon, examined plaintiff on December 12, 2007. *Id.* at 527-34. Dr. Anel reviewed plaintiff's medical records and history, and conducted an examination. *Id.* Dr. Anel observed that plaintiff had positive Phalen's and Tinel's tests, and negative Finkelstein's tests. *Id.* at 532. Dr. Anel further observed that the radial and ulnar pulses on both wrists were "full and bounding and palpable." *Id.* Dr. Anel diagnosed plaintiff with bilateral wrist

12

carpal tunnel syndrome, specifically noting that he was aware of Dr. Tabibian's EMG results but that it was "common knowledge" that a certain percentage of carpal tunnel cases may not present with abnormal EMG findings. *Id.* Dr. Anel submitted his report as an authorization request for carpal tunnel decompression of both wrists. *Id.* at 512, 533.

*Dr. Ronald Portnoff*[4]

Dr. Portnoff, an orthopedic surgeon, appears to have examined plaintiff on at least two occasions. *Id.* at 256-58, 306-08, 451-52. On May 16, 2008, Dr. Portnoff reviewed plaintiff's medical records and history, and examined plaintiff. *Id.* at 256-58. Dr. Portnoff found, among other things, that plaintiff: experienced tenderness on the paravertebral muscles and thoracic area; had decreased sensation along the median nerve of the hands; and had cervical, thoracic, and lumbar strain superimposed on preexisting arthritic changes. *Id.* at 257-58. Dr. Portnoff opined that plaintiff should avoid repetitive bending, stooping, heavy lifting, pushing, pulling, and twisting of the hands. *Id*. at 257.

Subsequently, Dr. Portnoff reevaluated plaintiff and additional MRIs. *Id.* at 306. After the second examination, Dr. Portnoff's diagnostic impression was that plaintiff had: cervical strain; lumbar strain; degenerative disc disease of the cervical spine; thoracic disc disease without disc protrusion; low back strain; degenerative lumbar disease; lumbar disc disease; disc protrusion; disc bulges; osteoarthritis; and a history of anxiety disorder and depression. *Id.* Dr. Portnoff

---

[4]   The Administrative Record does not contain any of Dr. Portnoff's reports and supplemental reports. Dr. Portnoff's reports are solely referenced by Dr. Kadaba. *See* AR at 256-58, 306-08, 446, 451-52. Dr. Kadaba stated that portions of Dr. Portnoff's reports needed further explanation, plaintiff claimed that Dr. Portnoff did not perform all of the examinations, and Dr. Portnoff did not adhere to the AMA Guides. *Id*. at 257-58, 307. Because Dr. Portnoff's reports are not included in the Administrative Record, his opinions do not constitute evidence and are discussed only to provide context.

1   opined the same work limitations.  *Id.*

2   Dr. Portnoff issued three additional reports after reviewing additional

3   records and Dr. Kadaba's responses.  *Id.* at 451-52.  Dr. Portnoff's diagnosis

4   remained relatively unchanged except for the additional diagnosis of bilateral

5   carpal tunnel.  *Id.* at 451.  Dr. Portnoff's opinion regarding work limitations

6   remained unchanged.  *Id.*

7   **c.    State Agency Physicians**

8   *Dr. H. Blandon*

9   Dr. Blandon, a state agency physician, issued an RFC assessment and case

10  analysis on July 3, 2008.  *Id.* at 239-47.  Dr. Blandon opined that plaintiff could

11  occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, and

12  stand/walk/sit for six hours in an eight-hour workday.  *Id.* at 240.  Dr. Blandon

13  further opined that plaintiff could occasionally climb, balance, stoop, kneel,

14  crouch, and crawl, but was precluded from activities requiring balancing.  *Id.* at

15  241.

16  **2.    The ALJ's Findings**

17  Here, the ALJ's RFC assessment was a direct adoption of the work

18  limitations from Dr. Kadaba's WC Report.  *Id.* at 36.  In reaching that

19  determination, the ALJ rejected Dr. Kadaba's other opinions, gave less weight to

20  Dr. Galleno's opinion, and some weight to Dr. Fabella's and Dr. Blandon's

21  opinions.  *Id.* at 37-40.  The ALJ erred because he failed to give specific and

22  legitimate reasons supported by substantial evidence for rejecting Dr. Kadaba's

23  other opinions and Dr. Galleno's opinion.[5]

24

---

25  [5]    The ALJ correctly noted that it was within his purview, and not the

26  physician's, to make the ultimate disability determination.  AR at 39; 20 C.F.R.
§ 416.927(d).  But the ALJ still must provide specific and legitimate reasons when

27  rejecting a physician's opinion.  *See Smith v. Astrue*, No. 10-4463, 2011 WL

28  5294848, *4 (N.D. Cal. Nov. 3, 2011) ("Although the treating physician's opinion

### a.    Dr. Kadaba

None of the ALJ's reasons for rejecting Dr. Kadaba's opinions are specific and legitimate reasons supported by substantial evidence.

First, the ALJ rejected Dr. Kadaba's opined functional limitations in the Musculoskeletal and Spinal Impairment Questionnaires on the basis that the findings were inconsistent with those in the WC Report, which he adopted because the findings were contemporaneous with an examination. *Id.* at 37. Internal inconsistencies may be a specific and legitimate reason for rejecting a physician's opinion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (holding that it was not error for the ALJ to not fully credit a physician's statements on the basis that they were internally inconsistent). But in this instance, substantial evidence does not support the ALJ's conclusion.

The ALJ focused on the fact that in the Musculoskeletal Questionnaire, Dr. Kadaba precluded plaintiff from repetitive grasping and lifting (AR at 231), then in the WC Report Dr. Kadaba precluded plaintiff from repetitive lifting, carrying, gripping, and grasping more than twenty-five pounds (*id*. at 260), and finally in the Spinal Impairment Questionnaire, Dr. Kadaba failed to limit gripping and grasping (*id.* at 433-39). *Id.* at 37 n.2. The ALJ is correct that the opinions were not identical. But the inconsistencies were minor, not contradictory. *See Sprague v. Bowen*, 812 F.2d 1226, 1230-31 (9th Cir. 1987) (reference to minor differences or inconsistencies is not a specific and legitimate reason for rejecting the physician's opinion). Dr. Kadaba's inconsistencies stand in sharp contrast to *Rollins*, in which the physician had claimed that the plaintiff was disabled but his notes from an earlier examination indicated that the plaintiff was not disabled.

is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, an ALJ must provide 'specific and legitimate reasons for rejecting the opinion of the treating physician.'") (*quoting Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

1   *Rollins*, 261 F.3d at 856.  While Dr. Kadaba's failure to list gripping and grasping

2   in the Spinal Impairment Questionnaire was inconsistent with his other opinions,

3   substantial evidence supports the conclusion that it was likely an oversight.  In Dr.

4   Kadaba's reports, he consistently discussed plaintiff's carpal tunnel syndrome and

5   her need for surgery.  *See, e.g.*, *id.* at 271, 445-58.

6        The ALJ also stated that the opinions were inconsistent because Dr. Kadaba

7   opined limitations with respect to sitting, standing, and walking only in the Spinal

8   Impairment Questionnaire.  *Id.* at 37 n.2.  The ALJ is correct that Dr. Kadaba did

9   not mention sitting, standing, and walking limitations in the Musculoskeletal

10  Questionnaire, but that form did not ask Dr. Kadaba to opine about those

11  limitations except to the extent plaintiff would require an assistive device for

12  standing and walking.  *See id.* at 231.  Thus, the fact that Dr. Kadaba did not

13  mention such limitations in the Musculoskeletal Questionnaire did not render it

14  inconsistent with his other opinions.  And given that the ALJ included a standing

15  and walking restriction in his RFC assessment, which he adopted directly from the

16  WC Report, the ALJ is clearly incorrect in his assertion that the WC Report did

17  not restrict standing and walking.[6]  *See id.* at 260.  As such, reference to the

18  inconsistencies with respect to standing and walking was not a specific and

19  legitimate reason for discounting the Musculoskeletal and Spinal Impairment

20  Questionnaires.

21       Second, although the ALJ adopted Dr. Kadaba's limitations as set forth in

22  the WC Report, the ALJ appeared to do so reluctantly as he also discounted Dr.

23  Kadaba's opinions as a whole.  *See id.* at 37-38 (accepting the WC Report with

24  reservation and declining to find Dr. Kadaba's opinions controlling).  The ALJ

25  rejected Dr. Kadaba's conclusions on the ground that there was concern that Dr.

26

27       [6]  The ALJ correctly noted that Dr. Kadaba did not opine any sitting

28  limitations in the WC Report.

16

1  Kadaba, by his "unstinting" criticism of Dr. Portnoff's conclusions, had "ventured

2  beyond his role as a treating physician and become an expert witness for

3  [plaintiff]." *Id.*

4      This court disagrees Dr. Kadaba's criticisms of Dr. Portnoff's opinions

5  constitute substantial evidence that Dr. Kadaba was biased. Dr. Kadaba's

6  statements may be interpreted as harsh or arrogant, but his criticisms appear

7  supportable. Indeed, since Dr. Portnoff's reports are not included in the record,

8  the ALJ had no basis to find otherwise – although the ALJ's opinion suggests he

9  in fact speculated about those reports and somehow credited the unseen reports

10 over Dr. Kadaba's. *See id.* at 40. Further, there is no evidence of bias or

11 impropriety by Dr. Kadaba. *See Lester*, 81 F.3d at 832 ("The Secretary may not

12 assume that doctors routinely lie in order to help their patients collect disability

13 benefits.") (internal quotations and citation omitted). Moreover, Dr. Kadaba's

14 findings and conclusions were consistent internally and with the opinions of

15 several other physicians, as set forth above.

16     Defendant argues at length that the ALJ properly rejected certain of Dr.

17 Kadaba's opinions as inconsistent with the other medical evidence, including the

18 opinions of Drs. Hafezi, Fabella, Coats, Kinchen, and Galleno. D. Mem. at 9-14.

19 The court need not decide whether this contention is supported by substantial

20 evidence because the ALJ did not state he rejected or discounted Dr. Kadaba's

21 opinions on this basis. *See AR* at 37-39. Indeed, to the extent he discussed any of

22 these physicians' opinions at all, the ALJ explicitly gave only "some weight" to

23 Dr. Fabella's opinion, no "special significance" to the opinion of Dr. Coats, and

24 "less weight" to Dr. Galleno's opinions. *See id.* at 38-39.

25     The court is limited to considering the reasons the ALJ actually gave for

26 rejecting or discounting Dr. Kadaba's opinions. *See Orn v. Astrue*, 495 F.3d 625,

27 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the

28

1  disability determination and may not affirm the ALJ on a ground upon which he
2  did not rely." (citation omitted)).  Those reasons were only two: that Dr. Kadaba's
3  own opinions were inconsistent with one another, and that Dr. Kadaba improperly
4  criticized Dr. Portnoff.  As discussed above, those were not specific and legitimate
5  reasons supported by substantial evidence.

6                                                **b.   Dr. Galleno**

7       Similarly, the ALJ gave less weight to Dr. Galleno's opinions on the basis
8  that there were internal inconsistencies.  AR at 39.  Specifically, the ALJ stated
9  that in the Galleno Evaluation, Dr. Galleno opined that plaintiff could lift and
10  carry five pounds and should avoid repetitive bending and stopping, but in the
11  Galleno Questionnaire, he opined that plaintiff could occasionally lift and carry
12  ten pounds and precluded plaintiff from bending and stooping.  *Id.* at 38-39.

13       Again, the inconsistencies were minor.  *See Sprague*, 812 F.2d at 1230-31.
14  In contrast to *Rollins*, where the physician's assessment contradicted his earlier
15  statement regarding disability, Dr. Galleno consistently opined that plaintiff had
16  exertional limitations.  *See Rollins*, 261 F.3d at 856.  A five-pound difference in
17  the maximum weight plaintiff could lift or carry and inconsistency between
18  whether plaintiff was precluded from all or merely repetitive bending and stooping
19  were not significant enough to constitute specific and legitimate reasons for
20  rejecting Dr. Galleno's entire opinion.

21       Accordingly, the ALJ erred in rejecting portions of Dr. Kadaba's opinions
22  and in discounting Dr. Galleno's opinions.

23  **C.   The ALJ Failed to Properly Consider Plaintiff's Credibility**

24       Plaintiff contends that the ALJ failed to properly consider plaintiff's
25  credibility.  Pl. Mem. at 22-25.  Specifically, plaintiff argues that the ALJ failed to
26  provide a clear and convincing reason supported by substantial evidence for
27  discounting plaintiff's credibility.  *Id.*  The court agrees.

28

18

1    The ALJ must make specific credibility findings, supported by the record.

2    SSR 96-7p.  To determine whether testimony concerning symptoms is credible, the

3    ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-

4    36 (9th Cir. 2007).  First, the ALJ must determine whether a claimant produced

5    objective medical evidence of an underlying impairment "'which could reasonably

6    be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting

7    *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if there

8    is no evidence of malingering, an "ALJ can reject the claimant's testimony about

9    the severity of her symptoms only by offering specific, clear and convincing

10   reasons for doing so."  *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d

11   1030, 1040 (9th Cir. 2003).  The ALJ may consider several factors in weighing a

12   claimant's credibility, including:  (1) ordinary techniques of credibility evaluation

13   such as a claimant's reputation for lying; (2) the failure to seek treatment or follow

14   a prescribed course of treatment; and (3) a claimant's daily activities.  *Tommasetti*

15   *v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346.

16   At the first step, the ALJ found that plaintiff's medically determinable

17   impairments could reasonably be expected to cause the symptoms alleged.  AR at

18   40.  At the second step, because the ALJ did not find any evidence of malingering,

19   the ALJ was required to provide clear and convincing reasons for discounting

20   plaintiff's credibility.

21   Here, the ALJ discounted plaintiff's credibility solely on the basis that the

22   medical records did not support her claims.  *Id.* at 39-40.  By itself, the reason was

23   not clear and convincing.  Although the lack of objective medical evidence may be

24   one factor in evaluating credibility, it cannot be the sole reason for rejecting a

25   claimant's subjective complaints.[7]  *Bunnell*, 947 f.2d at 345 ("[O]nce the claimant

26

27   [7]  Moreover, the ALJ may not substitute his own interpretation of the medical

28   evidence for the opinion of medical professionals.  *See Tackett v. Apfel*, 180 F.3d

produces objective medical evidence of an underlying impairment, an adjudicator may not reject [her] subjective complaints based solely on a lack of objective medical evidence."); *Rollins*, 261 F.3d at 856-57.

Defendant cites other reasons for discounting plaintiff's credibility, which may be clear and convincing if supported by substantial evidence; however, the ALJ does not cite those reasons. *Compare* D. Mem. at 17-19 and AR at 39-40. Again, the court may not affirm the ALJ on a ground upon which he did not rely. *Orn*, 495 F.3d at 630.

Accordingly, the ALJ erred in failing to cite a clear and convincing reason for discounting plaintiff's credibility.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility).  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

---

1094, 1102-03 (9th Cir. 1999); *Rohan v. Chater*, 98 F.3d 966, 970 (9th Cir. 1996) (finding that the ALJ improperly substituted his own judgment of the evidence for that of the physician).

Here, as set out above, remand is required because the ALJ erred in failing to provide a sufficiently specific RFC assessment, in failing to provide specific and legitimate reasons supported by substantial evidence for rejecting or discounting Dr. Kadaba's and Dr. Galleno's opinions, and in failing to properly evaluate plaintiff's credibility.  On remand, the ALJ shall:  (1) reconsider the opinions of Dr. Kadaba and Dr. Galleno, and either credit their opinions or provide specific and legitimate reasons supported by substantial evidence for rejecting them; (2) reconsider plaintiff's subjective complaints and either credit plaintiff's testimony or provide clear and convincing reasons supported by substantial evidence for rejecting them; and (3) clearly state his RFC determination.  The ALJ should also further develop the record as necessary to resolve any ambiguity, including by obtaining the treatment notes and reports of Dr. Portnoff and, if necessary, contacting Dr. Kadaba and Dr. Galleno.

The ALJ shall then proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: November 9, 2012

SHERI PYM
United States Magistrate Judge

21